UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

METRO SANITATION, L.L.C.,

    Plaintiff(s),

v.

C & R MAINTENANCE, INC.,

    Defendant(s).
_____/

Case No. 05-70673

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO DISMISS [18] AND GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [19]**

    This is a dispute concerning service marks and trade dress rights under the Lanham Act and Michigan law.  Each side has filed a motion to dismiss alleging that the opposing party's mark and/or dress is not protected.  Some of the arguments presented by the parties involve issues of fact that cannot be resolved at this stage.  However, neither party is permitted, as a matter of law, to bring a claim for conversion of service marks or trade dress under Michigan law.  Therefore, for these reasons and as set forth more thoroughly below, both Plaintiff's motion [18] and Defendant's motion [19] are GRANTED IN PART and DENIED IN PART.

**I.    Factual and Procedural Background**

    Plaintiff Metro Sanitation, L.L.C. ("Metro" or "Plaintiff") and Defendant C & R Maintenance, Inc., a company that does business as Rizzo Services, ("Rizzo" or "Defendant") both provide waste management and disposal services.  (Compl. ¶¶ 6, 10.)

In July of 1999, Metro created an "Express Service" division that provides drop-off trailers for construction waste materials. (Id. ¶ 6.) On February 16, 2005, Metro filed an application with the U.S. Patent and Trademark Office ("USPTO") for protection of the phrases "Express Service" (Serial No. 78568417), "Express Service & Design" (Serial No. 78568414), and "Express & Design" (Serial No. 78568407). (Compl. ¶ 8; Am. Counter-Compl. ¶ 27.) Metro has used a variety of colors for its equipment, including blue and green. (Id. ¶ 19.) For its new "Express Service," the trailers are red. (Id. ¶ 25.)

Rizzo uses the phrase "Rizzo Express Services" on its trailers. (Id. ¶ 12.) On October 5, 2004 (or, according to Plaintiff, in January of 2005), Rizzo filed an application with the USPTO for protection of "Rizzo Express" and "Rizzo Services." (Id. ¶ 16; Compl. ¶ 11.) Rizzo's vehicles and equipment are all red. (Am. Counter-Compl. ¶ 11.) Defendant claims this color has come to be known as "Rizzo-Red." (Id.)

On February 4, 2005, the domain name "rizzoexpress.com" was registered to Sharon Campo through Yahoo!, Inc. ("Yahoo"). (Id. ¶ 27.) Ms. Campo is the wife of one of Metro's shareholders. (Id.) The address "rizzoexpress.com" was originally set up so that, when a user entered this name into his browser, Metro's website (www.metrosanitation.com) would appear. (Id.)

On February 22, 2005, Metro filed a complaint alleging that Rizzo had infringed rights it acquired in its service marks and trade dress and therefore violated § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); Michigan's Consumer Protection Act, MICH. COMP. LAWS § 445.903; common law unfair competition; and conversion.

On May 9, 2005 Rizzo filed an amended counter-complaint. It alleges that, pursuant to § 43(a) of the Lanham Act, Metro's color scheme constitutes trade dress violations. It

similarly claims that Metro's actions constituted violations of Michigan's Consumer Protection Act, MICH. COMP. LAWS § 445.903, common law unfair competition, and conversion. In addition, Rizzo claims that Metro and Campo violated the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), when "rizzoexpress.com" was registered and users were automatically directed to Metro's website.[1]  Metro and Rizzo have filed motions to dismiss.

## II.  Standard of Review

"Dismissal pursuant to a Rule 12(b)(6) motion is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 745 (6th Cir. 2004)(citation omitted). The factual allegations in the complaint must be looked at as if they were true. *Id.* However, the court need not adopt the plaintiff's legal conclusions or unwarranted factual inferences. *Id.*

## III.  Rizzo's Motion to Dismiss

### A.  Classification of "Express" and "Express Service" marks

> The existence and extent of trademark protection for a particular term depends on that term's inherent distinctiveness. Courts have identified four general categories of terms: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. A generic or common descriptive term is one which is commonly used as the name or description of a kind of goods. It cannot become a trademark under any circumstances.

*Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743, 748 (6th Cir. 1996)(citations omitted). Rizzo argues that Metro's use of "Express" and "Express Service"

---

[1]  Rizzo originally claimed that Yahoo also violated this statute. On July 18, 2005, however, it voluntarily dismissed Yahoo from the case.

3

are generic terms. However, "[w]hether a name is generic is a question of fact." *Id.* (citation omitted). The issue cannot be decided on a motion to dismiss because the test for genericness requires the Court to consider "whether the public perceives the term primarily as the designation of the article." *Id.* (citation omitted). Thus, Rizzo's motion must be denied.[2]

---

[2]  In MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION(4th ed. 1996)(hereinafter "MCCARTHY ON TRADEMARKS"), there is an entire chapter devoted to "Generic Terms." In that chapter, numerous sections are devoted exclusively to the topic of "Consumer Surveys." *See* MCCARTHY ON TRADEMARKS §§ 12:14-12:17. In one section the author states as follows:

> Consumer surveys have become almost de rigueur in litigation over genericness. [citation omitted]  Judges are now used to survey evidence and often expect to receive evidentiary assistance by surveys in resolving generic disputes. [citation omitted]  A litigant who does not introduce a survey to support a generic challenge may be viewed as less than serious by many judges. As Judge Will stated in frustration, "Neither side in this case has produced any consumer surveys or other similar evidence. Both sides are at fault for such laxness." *Gimix, Inc. v. JS&A Group, Inc.*, 213 U.S.P.Q. 1005 (N.D. Ill. 1982). But there is no need for a survey *if other evidence* overwhelmingly proves that the disputed designation is a generic name. *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397 (6th Cir. 2002), *cert. denied*, 123 S. Ct. 1486 (2003)("Thus, the overwhelming evidence in this case obviates the need for [defendant] to have conducted a consumer survey.").

McCarthy on Trademarks § 12:17 (emphasis added). In *Nartron*, the Sixth Circuit granted a motion for summary judgment on genericness grounds. It noted that,

> on its summary judgment motion for genericness, ST sufficiently carried its burden of demonstrating the absence of any genuine issue of material fact on its claim of genericness. *ST produced overwhelming evidence*, which Nartron failed to rebut, that the term "smart power," as used by ST and other participants in the semiconductor industry, denotes a type of technology, not goods associated with Nartron.

*Nartron*, 205 F.3d at 405 (emphasis added). Thus, even where survey evidence is not used, a genericness challenge requires some evidence regarding public perception. This cannot be done in a motion to dismiss.

4

### B. Conversion of Service Marks under Michigan Law

"Under Michigan law, conversion is defined generally as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Murray Hill Publications, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 636-37 (6th Cir. 2001)(citation omitted).  Rizzo argues that Metro's claim for conversion based on its service marks cannot stand.  Specifically, it argues that Michigan does not recognize this type of claim.

In *Sarver v. Detroit Edison Co.*, 571 N.W.2d 759, 761 (Mich. Ct. App. 1997), the Michigan Court of Appeals rejected the plaintiff's claim for conversion based on her idea. The Court acknowledged that "Michigan appellate courts have held that certain intangible property can be the subject of a conversion action."  *Id.* at 762 (citing *Warren Tool v. Stephenson*, 161 N.W.2d 133 (Mich. Ct. App. 1968)(negotiable instrument); *Tuuk v. Andersen*, 175 N.W.2d 322 (Mich. Ct. App. 1969)(right to lease a machine); *Miracle Boot Puller Co., Ltd. v. Plastray Corp.*, 225 N.W.2d 800 (Mich. Ct. App. 1975)(patent right)).  But, it then noted that this has only occurred when "the plaintiff's ownership interest in intangible property was represented by or connected with something tangible."  *Id.*  The court focused on the existence of property rights, quoting cases that distinguished between ideas and protected intellectual property, such as trademarks.  *See id.* at 762-63.  It then concluded that the plaintiff did not establish any ownership interest in her idea and therefore could not maintain a conversion claim.  *Id.* at 763.

Metro urges the Court to accept the converse of the *Sarver* court's holding.  That is, a conversion claim can be maintained if an ownership interest can be established. However, this interpretation turns the ruling on its head.  In *Sarver*, the court explained one

condition necessary for a conversion claim. It did not hold that this condition was <u>sufficient</u> for such a claim. Metro has not cited and the Court has not found any cases which extend conversion to trademarks or service marks. In contrast, there are numerous cases which hold that this common law tort does not reach these bounds. *See, e.g., Big Time Worldwide Concert & Sport Clubt at Town Ctr. v. Marriott Int'l, Inc.*, 236 F.Supp.2d 791, 806-07 (E.D. Mich. 2003)(Michigan law); *Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F.Supp. 979, 981-82 (S.D. Tex. 1997)(Texas law). The Court therefore finds that an action for conversion of Metro's service marks would not be recognized in Michigan.

## IV. Metro's Motion to Dismiss

### A. Protection of Color under the Lanham Act

Metro first argues that Rizzo's use of the color red is not protected under the Lanham Act and therefore its trade dress infringement claims, brought under § 43(a) of the Lanham Act and Michigan statutory and common law, must fail.[3] Specifically, Metro contends that

---

[3] The Court notes that there appears to be some overlap between trade dress and trademark in this context. Traditionally,

> trade dress was limited to the overall appearance of labels, wrappers, and containers used in packaging a product. . . . [However, o]ver a period of years, the traditional definition gradually expanded to a second category which includes the totality of any elements in which a product or service is packaged or presented.

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8.1. Thus, under this definition, the manner in which a service is presented may qualify for trade dress protection. The color of the service provider's uniforms, equipment, etc. likely constitute the manner which it is presented.

The definition of trademark is also broad. It "includes any word, name, symbol, or device, or any combination thereof . . . ." 15 U.S.C. § 1127. "Since human beings might use as a 'symbol' or 'device' almost anything at all that is capable of carrying meaning, this language, read literally, is not restrictive." *Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 162 (1995). In fact, even a color may qualify as a trademark. *See id.* at 163.

the use of a "floating color," divorced from a specific product or container, is not protected.

Some courts have given protection based on the color of a product's packaging. *See, e.g., DAP Products, Inc. v. Color Title Mfg., Inc.*, 821 F.Supp. 488 (S.D. Ohio 1993)(red bucket used to package ceramic tile mastic entitled to protection). When a plaintiff seeks protection for a service rather than a product (as is the case here), the issue is more difficult. Although this issue has never been directly addressed, the Supreme Court has ruled that color *per se* can sometimes qualify for protection when used with a product. *See Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 166 (1995)(holding that "color alone, at least sometimes, can meet the basic legal requirements for use as a trademark"). The Court first turns to this case for guidance.

The plaintiff in *Qualitex Co. v. Jacobson Products Co., Inc.* sold pads that were used for dry cleaning presses. *Id.* at 161. For decades, it had colored these pads a special green-gold shade. *Id.* After noting that a color can act as a symbol, the Court specifically held that

> [a] color is also capable of satisfying the more important part of the statutory definition of a trademark, which requires that a person "use" or "intend to use" the mark "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown."

*Id.* at 162 (quoting 15 U.S.C. § 1127). Although "a product's color is unlike 'fanciful,' 'arbitrary,' or 'suggestive' words or designs, which almost *automatically* tell a customer that they refer to a brand[,]" the public may eventually correlate "a particular color on a product

---

Thus, the service provider's use of color in its uniforms, equipment, etc. can be protected by either trade dress or trademark rights. Rizzo's claim is for trade dress infringement however. Thus, the Court need not belabor this point any further.

or its packaging" with a specific company. *Id.* at 162-63 (citations omitted)(emphasis in original). In other words, a Lanham Act plaintiff may show that the color has achieved a "secondary meaning" therefore entitling it to protection. *Id.* at 163; *see also Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 211-12 (2000)("Indeed, with respect to at least one category of mark–colors–we have held that no mark can ever be inherently distinctive. . . . [A] color c[an] be protected as a trademark, but only upon a showing of secondary meaning.")(citing *Qualitex*, 514 U.S. at 162-163).

This rule can be translated to services, but not without some adjustment. Unlike a product, there will not always be a tangible object associated with a service that is capable of being colored. In some situations, however, specific equipment is needed for a service. For example, a taxi cab is directly tied to a taxi service. Courts have found that the Lanham Act gives protection to some cabs' colors. *See, e.g., Transportation, Inc. v. Mayflower Services, Inc.*, 769 F.2d 952 (4th Cir. 1985)(red/black color scheme used for taxi cabs acquired a "secondary meaning" and was therefore entitled to protection under 15 U.S.C. § 1125(a)); *Yellow Cab Transit Co. v. Louisville Taxicab & Transfer Co.*, 147 F.2d 407 (6th Cir. 1945)(Kentucky unfair competition law protected combination of yellow color of cab and "yellow" used in name of company). In other circumstances where colored items are needed to provide services, there is no reason why the *Qualitex* rule should not also apply: If a plaintiff shows that the color of its service equipment has achieved a "secondary meaning," the Lanham Act provides protection.[4]

---

[4] Most of the arguments against protecting color *per se* for services mirror those for products–*e.g.*, because colors are of limited supply, they will soon be exhausted. In *Qualitex*, the Supreme Court squarely addressed and rejected these arguments. *Qualitex*, 514 U.S. at 167-74.

8

In the counter-complaint, Rizzo claims that it has used "a distinctive red color on its vehicles, containers, trailers, and other equipment" and that this color "is associated exclusively" with its business.  (Am. Counter-Compl. ¶¶ 11, 13.)  While it is possible that every piece of Rizzo's red "equipment" has not achieved a secondary meaning, this is a factual inquiry and therefore not appropriate for a motion to dismiss.  *See, e.g., Platinum Home Mortg. Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 731 (7th Cir. 1998) ("Secondary meaning is a question of fact . . . .")(citation omitted).[5]  The other elements of a trade dress claim–*e.g.*, likelihood of confusion–are not presently before the Court.  Therefore, the Court does not decide them here.

**B.  "Famousness" and "Distinctiveness" of Rizzo's Trade Dress**

Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides federal protection for dilution of trademarks.

> For a plaintiff to succeed on a federal claim of dilution (1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark.

*Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 577 (6th Cir. 2000)(citations omitted).  In its motion to dismiss, Metro only argues that Rizzo's trade dress is not "famous" or "distinctive."  Congress has set forth a non-exhaustive list of factors for courts to consider when making this determination:

(A)   the degree of inherent or acquired distinctiveness of the mark;

---

[5]   In the cases cited by Metro, the courts were faced with summary judgment motions.  *See, e.g., Mana Products, Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1063 (2d Cir. 1995).  Thus, Metro's reliance on them is misplaced.

    (B)  the duration and extent of use of the mark in connection with the goods or services with which the mark is used;
    (C)  the duration and extent of advertising and publicity of the mark;
    (D)  the geographical extent of the trading area in which the mark is used;
    (E)  the channels of trade for the goods or services with which the mark is used;
    (F)  the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;
    (G)  the nature and extent of use of the same or similar marks by third parties; and
    (H)  whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1225(c)(1).

Even a cursory review of these factors shows that the famousness and distinctiveness analysis require the court to consider facts outside of the pleadings and thus cannot be done on a 12(b)(6) motion. *Cf. Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 876 (9th Cir. 1999)(noting "the overlap between the statutory famousness considerations and the factors relevant to establishing acquired distinctiveness" and then holding that "[p]roof of acquired distinctiveness is a difficult empirical inquiry which a factfinder must undertake")(citing *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1119-20 & n. 7 (5th Cir.1991), *aff'd*, 505 U.S. 763 (1992)). For example, the first factor requires the Court to determine the degree of acquired distinctiveness. As noted above, this inquiry is not appropriate for a motion to dismiss.

Metro argues, however, that a mark cannot meet the distinctive requirement unless it is inherently distinctive (which, as noted above, a color cannot be). This ignores the plain language of the statute dealing with courts' analyses "[i]n determining whether a mark is distinctive and famous." *See* 15 U.S.C. § 1225(c)(1)(A) ("the degree of inherent *or acquired* distinctiveness of the mark")(emphasis added). In addition, contrary to Metro's

claim, the Sixth Circuit has not adopted this rule. Rizzo has alleged that its dress is famous. At the pleadings stage, this is sufficient. Thus, Rizzo's trademark dilution claim cannot be dismissed.

### C. Bad Faith Requirement of the ACPA

Rizzo's third claim is brought pursuant to the ACPA, which protects against "cybersquatting."

> A trademark owner asserting a claim under the ACPA must establish the following: (1) it has a valid trademark entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit.

*DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004)(citation omitted).

Metro asserts that this claim must be dismissed because Rizzo cannot show bad faith. This argument is also premature. "The issue of defendant's good or bad faith is primarily a question of fact requiring an examination of defendant's intent or state of mind." *Rohde v. Massachusetts Mut. Life Ins. Co.*, 632 F.2d 667, 670 (6th Cir. 1980)(citation omitted); *see also In re Abbott Laboratories Derivative Shareholders Litigation*, 325 F.3d 795, 811 (7th Cir. 2003)("[B]ad faith actions present a question of fact that cannot be determined at the pleading stage.")(citation omitted). Rizzo, in its counter-complaint, alleged that Metro acted in bad faith. Thus, the motion to dismiss the APCA claim on this ground must be denied.

### D. Conversion Claim

Metro argues that Rizzo's conversion claim cannot stand. For the reasons stated above, Michigan would not recognize a conversion claim in Rizzo's alleged trade dress. Thus, Metro's motion on this count is granted.

### IV. Conclusion

For the reasons stated above, the Court hereby orders that Rizzo's motion to dismiss is GRANTED IN PART and DENIED IN PART; and that Metro's motion to dismiss is GRANTED IN PART and DENIED IN PART.

SO ORDERED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: August 4, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 4, 2005, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager